UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEHULDEEP SINGH MANN<br><br>Plaintiff<br><br>-against-<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>DEPARTMENT OF HOMELAND SECURITY<br><br>Defendant | Case No.<br><br><br>COMPLAINT |

INTRODUCTION AND SUMMARY

1. This is the plaintiff, Mehuldeep Singh Mann's, complaint, charging that the United States Citizenship and Immigration Services (USCIS) improperly denied his motion to reopen the denial of his application for STEM OPT extension because it received his STEM OPT extension one day late.

2.  Mehuldeep Mann moved for reopening , on the grounds that this deadline should have been equitably tolled because he sent his application three days in advance by overnight delivery service and because the delivery was delayed by extraordinary circumstances beyond his control, that being an unusually fierce winter storm delaying the processing of his delivery.

3. The USCIS, in denying his motion, offered no explanation for its failure to apply equitable tolling except that "there's no regulations that give an exemption to a late filing."

4. Inasmuch as it is well settled that regulatory deadlines are generally subject to equitable tolling, and the USCIS has offered no reason why this one should not be, this Court should find the USCIS's decision denying Mehuldeep Mann's motion to reopen to not be in accordance with law, hold it unlawful and set it aside.

5. Further, inasmuch as the Department of Homeland Security (DHS), in amending its regulations to provide a deadline for the filing of STEM OPT extensions, failed to articulate any explanation for that deadline, nor considered an important part of the problem in making this amendment, such as the possibility that F-1 nonimmigrants might be delayed from filing timely applications due to extraordinary circumstances beyond their control, the DHS's decision to amend its regulations to establish the deadline Mehuldeep Mann was unable to meet should also be held arbitrary and so unlawful, and set aside.

## LEGAL BACKGROUND

6. 8 U.S.C. § 1101(a)(15) provides in relevant part that "(t)he term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens— …

(F)(i) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study consistent with section 1184(l) [1] of this title at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States, particularly designated by him and approved by the Attorney General after

consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the <u>Attorney General</u> the termination of attendance of each nonimmigrant student, … .

7.   Such nonimmigrants are commonly referred to a "F-1 students".

8.   8 C.F.R. § 214.2(f)(10 provides in relevant part that:

Practical training may be authorized to an F-1 student who has been lawfully enrolled on a full-time basis, in a Service-approved college, university, conservatory, or seminary for one full academic year. …
(ii)(A)… Consistent with the application and approval process in <u>paragraph (f)(11)</u> of this section, a student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. … A student may be granted authorization to engage in temporary employment for optional practical training: …
(3) After completion of the course of study, or, for a student in a bachelor's, master's, or doctoral degree program, after completion of all course requirements for the degree (excluding thesis or equivalent). Continued enrollment, for the school's administrative purposes, after all requirements for the degree have been met does not preclude eligibility for optional practical training.

9. 8 C.F.R. § 214.2(f)(10)(ii)(C)  provides in relevant part that " 24-month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree[1].

Consistent with paragraph (f)(11)(i)(C) of this section, a qualified student may apply for an extension of OPT while in a valid period of  post-completion OPT authorized under 8 CFR 274a.12(c)(3)(i)(B).[2]".

_____

[1] The term ''science, technology, engineering or mathematics field'' means a field included in the Department of Education's Classification of Instructional Programs taxonomy within the two-digit series or successor series containing engineering, biological sciences, mathematics, and physical sciences, or a related field. In general, related fields will include fields involving research, innovation, or development of new technologies using engineering, mathematics, computer science, or natural sciences (including physical, biological, and agricultural sciences). 8 C.F.R. § 214.2(f)(10)(ii)(C)(2)(i).
[2] 8 C.F.R. § 274a.12(c) provides in relevant part that:
An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept <u>employment</u> subject to any restrictions stated in the regulations or cited on the <u>employment</u> authorization document. …

   (3) A nonimmigrant (F-1) student who:

      (i)

      …

      (B) Is seeking authorization to engage in up to 12 months of post-completion Optional Practical Training (OPT) pursuant to <u>8 CFR 214.2</u>(f)(10)(ii)(A)(*3*);

10. This extension is commonly referred as a "STEM OPT extension".

BRIEF STATEMENT OF RELEVANT FACTS

THE PARTIES

11. The plaintiff, Mehuldeep Mann, is a native and citizen of India who was last admitted to the United States on December 4, 2019 as a nonimmigrant foreign student (F-1) for the purpose of completing a Master's degree in Electrical and Electronic Engineering from an American university.

12. The defendant, Department of Homeland Security (DHS), is the department which amended its regulations to add 8 C.F.R. § 214.2(f)(10)(ii)(C) and, in particular, to require that a "qualified student may (only) apply for an extension of OPT while in a valid period of post-completion OPT authorized under 8 CFR 274a.12(c)(3)(i)(B)" in order to be considered for a STEM OPT extension.

13. The United States Citizenship and Immigration Services is the agency authorized by the Secretary of Homeland Security to grant STEM OPT extensions.

14.  On February 26, 2020, Mehuldeep Mann was authorized by the USCIS to be employed in the U.S. until February 19, 2021, in post completion optional practical training pursuant to 8 CFR 214.2(f)(10)(ii)(A)(*3*).

15. On February 16, 2021, Mehuldeep Mann gave to the United States Postal Service (USPS) a Form I-765 and various supporting documents seeking a STEM OPT extension.

16. USPS agreed, for a premium fee, to deliver Mehuldeep Mann's said papers to USCIS no later than February 17, 2021.

17. This was 2 days before the February 19, 2021 date by which Mehuldeep Mann was required to file this application with USCIS. 8 CFR 214.2(f)(10)(ii)(C).

4

18. Unfortunately, the application was not delivered to USCIS until February 22, 2021, one (1)

business day after the regulatory deadline.

19. This late delivery was due to the following extraordinary circumstances beyond Mehuldeep

Mann's control:

    a.  The USPS's  delivery of Mr. Mann's application, not overnight as promised, or by the 2nd business day, or even by the 3rd business day following it being given to the USPS for overnight delivery, but rather by the 4th.

    b.  Severe weather conditions caused by Winter Storm Viola shocked the Texas area between February 15 and 20 of this year, just as Mr. Mann was mailing his package, which was received by the USPS in Wylie, Texas (just north of Dallas) on February 16, 2021. Exhibit A at 1.

        i.  Although the scheduled delivery date – in Chicago – was February 17, *id*., USPS tracking records show that it did not even arrive at the USPS's Coppel TX Distribution Center until February 18. *Id.* at 2.  A USPS press release from February 16, 2021 explains that:

Update on USPS operations for Texas mail processing plants

Texas- effective immediately, full operations have resumed at the following Texas mail processing plants:

North Texas PDC
951 W. Bethel Rd.
Coppel, TX 75099

The following mail processing plants have a temporary redirection:

…

Dallas PDC
401 Tom Landry Hwy.
Dallas, TX 75260

Will be redirected to:

North Texas PDC
951 W. Bethel Rd.
Coppel, TX 75099

The U.S. Postal Service apologizes for any inconvenience these temporary suspensions may have caused.

Exhibit A at 3

20. Thus the extraordinary delay between the pickup of Mehuldeep Mann's application in Wylie, Texas on February 16 and its arrival at the North Texas PDC on February 18, one day after it had been promised to be delivered in Chicago, was a result of the redirection of the package from the Dallas PDC, which was the closest to the Wylie, TX drop off location, to the North Texas PDC, due directly to the effects of Winter Storm Viola.

21. However, the adverse effects of the extraordinarily severe weather did not end there.

22. Pursuant to the USPS's commitment to overnight delivery, the package should have left the applicable Package Delivery Center the same day received or, at worst, early the next morning. Instead, although it arrived at the North Texas PDC at 9:15 a.m. on February 18, the package did not leave the Center until the end of the next business day, February 19, at 6:14 p.m. Exhibit A at 2..

23. This additional extraordinary delay in USPS processing times also must be attributed to Winter Storm Viola, since the storm caused all of the Dallas PDC's packages to be redirected to the North Texas PDC, which means the latter was now processing approximately double the packages it normally received. Exhibit A at 3.

24. This resulted in yet another day of delay in the package arriving at its destination in Chicago, for a total of 3 days lost, all because of the severe weather conditions created by Winter Storm Viola.

See:

a.   Peter Mullinax,  WPC Meteorologist, "Southern Plains to Northeast Winter Storm" WEATHER PREDICTION CENTER NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, 2/16 - 2/18 2021

https://www.wpc.ncep.noaa.gov/storm_summaries/event_reviews/2021/Southern_Plains_to_Northeast_Winter_Storm_Feb2021.pdf. Exhibit A at 3

b. "Winter Storm Viola Smashed Records and Brought Snow, Ice into Northeast," By weather.com meterologists, February 20, 2021. https://weather.com/safety/winter/news/2021-02-14-cross-country-winter-storm-northwest-south-midwest-east Exhibit A at 4-5.

c. Allana Akhtar, "Extreme Weather across the US is snarling operations for companies including Walmart, GM and FedEx" February 16, 2021 https://www.businessinsider.in/retail/news/extreme-weather-across-the-us-is-snarling-operations-for-companies-including-walmart-gm-and-fedex/articleshow/81017518.cms. Exhibit A at 6-16.

25. Because the USCIS did not receive Mehuldeep Mann's application until the business day following the due date provided by regulation, the USCIS issued a decision on April 27, 2021, denying Mr. Mann's application for a STEM OPT extension.

26.  On June 10, 2021, Mr. Mann filed a motion with USCIS to reopen its decision in which he argued that the filing deadline for this application should be equitably tolled for the reasons stated above.

27. On December 15, 2021, USCIS issued a decision denying Mr. Mann's motion, solely because "It's the responsibility of the applicant to make sure they file their Form I-765 properly and timely and there's no regulations that give an exemption to a late filing. The applicant failed to file his STEM OPT before his 12-month OPT expired as required by federal regulations."

## CAUSES OF ACTION

I.    THE USCIS'S DECISION THAT EQUITABLE TOLLING DOES NOT APPLY TO APPLICATIONS FOR STEM OPT EXTENSIONS IS NOT IN ACCORDANCE WITH LAW

28. The USCIS's sole basis for refusing to even consider applying equitable tolling to Mehuldeep Mann's late STEM OPT extension was because "there's no regulations that give an exemption to a late filing".

29. However, the  deadline provided in 8 CFR 214.2(f)(10)(ii)(C) is not "jurisdictional", and

therefore  subject to equitable tolling, in light of the Supreme Court's recent decision in

*Henderson v. Shinseki*, 131 S.Ct. 1197, 1202–03, 179 L.Ed.2d 159 (2011).

30. In *Henderson* the Supreme Court held that the 120–day deadline for seeking Veterans Court

review was not jurisdictional  because:

> "The terms of the provision setting that deadline, 38 U.S.C. § 7266(a), do not suggest,
> much less provide clear evidence, that the provision was meant to carry jurisdictional
> consequences. ... This provision "does not speak in jurisdictional terms or refer in any
> way to the jurisdiction of the [Veterans Court]," *Zipes v. Trans World Airlines, Inc.*, 455
> U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). If Congress had wanted the 120–
> day time to be treated as jurisdictional, it could have cast that provision in language like
> that in the provision of the VJRA that governs Federal Circuit review of decisions of the
> Veterans Court. This latter provision states that Federal Circuit review must be obtained
> "within the time and in the manner prescribed for appeal to United States courts of
> appeals from United States district courts." § 7292(a). Because the time for taking an
> appeal from a district court to a court of appeals in a civil case has long been understood
> to be jurisdictional, see Bowles, supra, at 209–210, and n. 2, 127 S.Ct. 2360, this
> language clearly signals an intent to impose the same restrictions on appeals from the
> Veterans Court to the Federal Circuit. But the 120–day limit at issue in this case is not
> framed in comparable terms. It is true that § 7266 is cast in mandatory language, but we
> have rejected the notion that "all mandatory prescriptions, however emphatic, are ...
> properly typed jurisdictional." *Union Pacific*, 558 U.S., at ——, 130 S.Ct., at 596
> (quoting *Arbaugh*, 546 U.S., at 510, 126 S.Ct. 1235; internal quotation marks omitted).
> Thus, the language of § 7266 provides no clear indication that Congress wanted that
> provision to be treated as having jurisdictional attributes.

*Henderson*, 131 S.Ct at 1204-1205

31. Of course it cannot be said that Congress intended the instant deadline to be jurisdictional, if

for no other reason than it is not a congressional creation at all, but, rather, a product of the

Secretary of Homeland Security's regulations.

32. In any event, the plain language of the regulation does not suggest, much less provide clear

evidence, that the provision was meant to carry jurisdictional consequences.

8

33. The same analysis which the 11th Circuit recently applied in concluding that *Henderson* precluded the filing deadlines for motions to reopen from being considered jurisdictional is equally applicable to the regulation here:

> The statute, similar to the statute at issue in *Henderson*, simply provides that "[e]xcept as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). The statute does not speak in terms of subject matter jurisdiction, i.e. "a tribunal's power to hear a case." *Union Pacific*, 130 S.Ct. at 596 (internal quotation marks omitted). Moreover, that the statute is written in mandatory terms is of no moment as the Supreme Court has rejected the idea that "all mandatory 'prescriptions, however emphatic, are ... properly typed jurisdictional.' " Id. (quoting *Arbaugh*, 546 U.S. at 510, 126 S.Ct. 1235); see also *Kontrick*, 540 U.S. at 454, 124 S.Ct. 906 (explaining that a time limitation may be emphatic without being jurisdictional).

*Avila-Santoyo v. U.S. Atty. Gen.*, 713 F.3d 1357, 1361 (11th Cir. 2013).

34. While it is true that unlike the statute at issue in *Henderson*, it is not apparent that the STEM OPT extension scheme is particularly solicitous to immigrants nor contains provisions that encourage the favorable review of such applications, again, that scheme is a product of regulation, not statute, and so casts no light on Congressional intent.

35. Nevertheless, immigration matters are somewhat similar to applications for veteran's benefits in that just as the Supreme Court has "long applied 'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'", *Henderson*, 131 S.Ct at 1206, quoting *King v. St. Vincent's Hospital*, 502 U.S. 215, 220–221, n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991), so too it recognizes the canon of statutory construction whereby ambiguities in immigration statutes are to be construed in favor of the noncitizen. *E.g. INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

36. Arguably, *Henderson* might have been limited because veterans' claims are traditionally treated liberally, but that argument cannot be made in light of the unanimous Supreme Court decision in *Arbaugh v. Y & H Corp*.

37. *Arbaugh* did not involve a class of litigants receiving special solicitude or even a time deadline.

38. The arguably jurisdictional requirement in that case was the fifteen-employee threshold for Title VII claims.

39. The unsuccessful employer tried to raise this after a jury verdict for the plaintiff, since jurisdictional requirements can never be waived.

40. Emphatically narrowing past purportedly "jurisdictional" rulings, *Arbaugh* says that the Court itself had been "less than meticulous" in making " 'drive-by jurisdictional rulings' that should be accorded no precedential effect."

41. The Court characterized its recent decisions as holding that "time prescriptions, however emphatic, are not properly typed jurisdictional."

42. That was so even where the Court itself had described them as "mandatory and jurisdictional," because the Court itself had been "profligate in its use of the term." *Irigoyen-Briones v. Holder*, 644 F.3d 943, 948-949 (9th Cir. 2011) (footnotes and citations omitted).

43. Accordingly, the USCIS erred as a matter of law when it failed to consider whether Mehuldeep Mann's application for a STEM OPT extension was subject to equitable tolling. WHEREFORE this Court should hold the USCIS's decision denying Mr. Mann's motion to reopen unlawful, as not in accordance with law, and set it aside. 5 U.S.C. § 706(2).

## COUNT II

44. On March 16, 2022, the Department of Homeland Security amended its F–1 nonimmigrant student visa regulations on optional practical training (OPT) for certain students with degrees in science, technology, engineering, or mathematics (STEM) from U.S. institutions of higher education.

45. Specifically, the final rule allowed such F–1 STEM students who have elected to pursue 12 months of OPT in the United States to extend the OPT period by 24 months.

50. This final rule provided, among other things that " a qualified student may apply for an extension of OPT while in a valid period of post-completion OPT authorized under 8 CFR 274a.12(c)(3)(i)(B)."

46. Neither the final rule, nor the earlier proposed rule, provided any explanation, rational or otherwise, for requiring that applications for STEM OPT extensions must be filed while the F-1 STEM student is in a valid period of post-completion OPT authorized under 8 CFR 274a.12(c)(3)(i)(B).

47. In particular, the rule provided no rational explanation, or explanation at all, of why an F-1 STEM student could not apply for an extension of OPT while he was in the 60 day period of lawful status following the expiration of his first period of post completion OPT,  pursuant to 8 CFR 214.2(f)(5)(iv). *See La. PSC v. FERC*, Nos. 20-1104, 20-1356, 2021 U.S. App. LEXIS 36001, at *10 (D.C. Cir. Dec. 7, 2021) ("If an agency does not provide a rational explanation for its action based on the relevant data, then that action is arbitrary and capricious.").

48. Further, the rule failed entirely to consider an important aspect of the problem, namely whether there should be an exception for persons who were unable to make a timely filing, despite due diligence, due to extraordinary circumstances beyond their control.  See *Little Sisters of the Poor Saints Peter & Home v. Pennsylvania*, 140 S. Ct. 2367, 2384 (2020).

WHEREFORE this Court should find the USCIS's decision denying Mr. Mann's application for a STEM OPT extension to be arbitrary and capricious, and hold it unlawful and set it aside. 5 U.S.C. § 706(2).

COUNT III

THE COURT SHOULD COMPEL THE USCIS TO PROMPTLY ISSUE A DECISION ON
MR. MANN'S STEM OPT EXTENSION APPLICATION AND/OR MOTION TO REOPEN

49. The USCIS's unlawful denial of Mulhdeep Mann's application for a STEM OPT extension

has unreasonably delayed a proper adjudication of the same.

50. The USCIS's unlawful denial of Mulhdeep Mann's Motion to Reopen has unreasonably

delayed a proper adjudication of the same.


WHEREFORE this Court should order USCIS to render a  decision upon Mr. Mann's

application for STEM OPT extension and Motion to Reopen immediately upon this Court's

Order setting aside the corresponding denial(s), 5 U.S.C. § 706(1).


Respectfully Submitted this 1st day of February, 2022


s/*Michael E. Piston*

Michael E. Piston  (MI 002)
Attorney for Plaintiff
38-08 Union St. Suite 9A
Flushing, NY 11354
646/845-9895
Fax: 206-770-6350
Michaelpiston4@gmail.com